UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| LEISA D. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-552-SEB-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY**

Leisa Hill ("Hill") seeks judicial review of a final decision by the Commissioner of

the Social Security Administration ("Commissioner") denying her application for

Disability Insurance Benefits ("DIB") and her application for Supplemental Security

Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in

any substantial gainful activity by reason of a medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present

medical evidence of an impairment that results "from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and

laboratory diagnostic techniques.  A physical or mental impairment must be established

by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined

to be disabled if he can perform any other work in the relevant economy. The claimant bears the burden of proof at steps one through four, and at step five the burdens shifts to the Commissioner. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

## Factual and Procedural Background

Hill filed her applications for DIB and SSI on October 12, 2004, alleging an onset date of disability of May 25, 2004, based on various physical and mental impairments. Both applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on July 14, 2008. Hill appeared accompanied by her attorney. Medical and other records were introduced into evidence. Hill, two medical experts, and a vocational expert testified at the hearing. Because the record was not complete, further evidence was submitted following the hearing. A second hearing was held on August 28, 2008. Hill again appeared accompanied by her attorney. The same two medical experts and

vocational expert from the prior hearing testified again. A supplemental hearing was held on August 29, 2008 to allow Hill and her husband to complete their testimony.

The ALJ issued an unfavorable decision, denying DIB and SSI benefits on September 16, 2008. On March 4, 2009, the Appeals Council denied Hill's request for review, making the ALJ's decision final. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by civil action . . . in [a] district court of the United States."

The ALJ found that Hill met the insured-status requirements of the Act through September 30, 2008. At step one of the sequential evaluation process, he found that Hill had not engaged in substantial gainful activity since May 25, 2004, the alleged onset date. At step two, the ALJ found that Hill had severe impairments consisting of degenerative disc disease in the lumbar spine and major depressive disorder. At step three, the ALJ determined that Hill does not have an impairment or combination of impairments that meets or medically equals any of the Listing of Impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1.

The ALJ then determined Hill's RFC for steps four and five of his evaluation. He found that she retained the ability to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) on a regular and continuing basis as long as the

work does not involve interaction with the general public.  Specifically, he found that Hill: (1) can lift or carry ten pounds frequently and can lift or carry twenty pounds occasionally; (2) can stand or walk, off and on, for six hours during an eight-hour workday and can sit intermittently; (3) can use her hands and arms for grasping, holding, and turning objects; (4) also retains the mental RFC to understand, remember, and carry out the tasks characteristic of semi-skilled and unskilled work; and (5) can make work-related decisions and can deal with changes in a routine work setting and can respond appropriately to co-workers and supervisors, but should not be required to interact with the general public.  Based on these findings, the ALJ determined at step four that Hill could perform her past relevant work as an assembler as actually and generally performed, and thus, that she was not disabled.  Because the ALJ did not reach step five of the sequential evaluation process, he did not make findings regarding Hill's age, work experience, or education.

On May 4, 2009, Hill filed her Complaint in this Court.  On December 4, 2009, Hill filed a motion to supplement the record with three additional exhibits (dkt 21), and, on December 22, 2009, filed an amended motion to supplement the record (dkt 29).  On December 22, 2009, Hill filed a motion for a sentence six remand to the Commissioner to evaluate the record and new evidence in Hill's case.  Both motions to supplement the record were granted for purposes of a sentence six remand, but not with respect to Hill's request for a sentence four remand (dkt 33), because a reviewing court may not reverse an ALJ's decision based on evidence which was never presented to the ALJ.  *See Micus v.*

*Bowen*, 979 F.2d 602, 606 n.1 (7th Cir. 1992).

## Evidence

Hill is forty-nine years old, married, and has a high school education and some vocational training in dental assistance. Although she presented evidence at the hearing before the ALJ regarding a myriad of physical and mental ailments, including degenerative disc disease, scoliosis, legal blindness in her right eye, alcohol dependence, fibromyalgia, and bipolar disorder, the ALJ found she had severe impairments consisting only of degenerative disc disease and major depressive disorder. Because, as discussed below, Hill challenges the ALJ's findings and analysis only as they relate to her fibromyalgia and bipolar disorder, we address the evidence relating to her other mental and physical impairments only to the extent that it is relevant to the issues at hand.

## Fibromyalgia

With respect to fibromyalgia, Hill's medical records contain passing references to the condition but do not demonstrate that Hill was ever formally diagnosed with this condition. (R. 311, 313-14, 456). Dr. Julie Becker, Hill's treating physician for fibromyalgia, degenerative disc disease, and chronic lower back pain, first examined Hill in 2006. (R. 456). At various appointments, Dr. Becker noted decreased reflexes in Hill's lower extremities and tenderness in her spine, and she refilled and adjusted Hill's prescriptions for Lortab and morphine for the pain in accordance with her findings. (R. 461-62, 676-78). In June 2007, Hill reported her pain as a three on a scale of one to ten and stated her medications were helping with the pain. (R. 676). In October 2007, Hill

told Dr. Becker that her pain was "getting a little worse;" Dr. Becker noted that Hill's spine was tender and increased her Morphine dosage. (R. 676).

On August 6, 2008, Dr. Becker stated in a letter, with regard to Hill's degenerative disc disease and fibromyalgia, that narcotic pain medication had at times been successful in reducing Hill's pain to a more tolerable level but that she was never pain-free. (R. 456). According to Dr. Becker, movement worsened Hill's pain; sitting provided her some relief; and she required a cane because pain affected her balance. (R. 456). Dr. Becker completed an RFC questionnaire noting that Hill could sit for four hours; stand or walk for up to one hour; occasionally lift or carry twenty to fifty pounds; could not pull or bend; and had significant limitations in repetitive reaching, handling, fingering, or lifting. (R. 456). Dr. Becker also reported that Hill had a limited range of motion at unspecified joints; trigger points and muscle spasms in her lower back; and mild sensory loss, decreased reflexes, muscle atrophy, and muscle weakness in her lower extremities. (R. 456).

At the hearing before the ALJ, Dr. Richard Hutson, an orthopedic surgeon, testified as to Hill's physical impairments. (R. 741-50, 790-96). He specifically noted that, though the medical evidence contains references to fibromyalgia, it did not mention the required tender points or the American College of Rheumatology's requirements for a diagnosis of fibromyalgia (R. 791-92). He stated that, based on his review of the record, Hill could perform light work and that, though Hill used a wheelchair and a cane, no medical evidence supported a need for them. (R. 747, 792, 794-96).

7

**Bipolar Disorder**

In detailing Hill's medical history with respect to bipolar disorder, we are mindful that Hill has been diagnosed with several other mental health disorders in addition to bipolar disorder, including panic disorder with agoraphobia, attention-deficit disorder, alcohol dependency, alcohol abuse, and, most importantly for purposes of this appeal, major depression. (R. 215, 299-300). Thus, Hill's bipolar disorder cannot be considered in isolation because her symptoms and treatment for this disorder often overlap with her other conditions.

The record discloses that Hill was diagnosed with severe, recurrent major depression on January 7, 2005. (R. 299-300). Soon thereafter, a therapist confirmed the diagnosis of depression, noting it was without psychotic features, and provisionally ruled out a diagnosis of bipolar disorder. (R. 215). Also in 2005, Dr. Joseph Pressner, Ph.D., a state agency reviewing physician, completed a Psychiatric Review Technique form, recording that based on his findings Hill was moderately limited in her social functioning and concentration, persistence, or pace, and mildly limited in her activities of daily living. (R. 279-97). Dr. Pressner found that Hill could "perform simple, repetitive tasks on a sustained basis without extraordinary accommodations." This opinion was subsequently affirmed by a separate state agency reviewing physician. (R. 281).

On March 9, 2005, Hill began seeing Dr. Richard Rahdert, her treating physician, for outpatient medication management. (R. 397). Dr. Rahdert prescribed medications for Hill's depression, panic disorders, and bipolar symptoms. (R. 397, 432-33). She

continued to see him approximately once every four months.  Also in 2005, Hill started meeting with an outpatient therapist, Ms. Cassidy Shorter, M.A., after experiencing suicidal thoughts.  (R. 431, 450).  Over the ensuing few years until the date of the ALJ hearing, Hill's medication and dosages for treating her depression and other disorders changed frequently and the medication was deemed effective in treating Hill's disorder.  During that time period, Hill alternated between times when she felt "good" and times of depression, as summarized below.

In May 2006, following a hospitalization for drinking and overdosing on one of her medications, Dr. Rahdert diagnosed Hill with bipolar disorder, recording her Global Assessment Functioning score at 22, which indicated behavior that is considerably influenced by delusion or hallucinations, a serious impairment in communication or judgment, or an inability to function in almost all areas.  (R. 442).  Later that same month, Hill was diagnosed with bipolar disorder by two separate physicians, one of whom noting that, though Hill experienced some significant depressive episodes with poor concentration and some manic episodes, she did well on her medications.  (R.169-70, 437).

From January to October 2007, Hill reported to Dr. Rahdert and Ms. Shorter that she was doing very well and her medications were helping.  (R. 571, 418, 676, 412, 539, 488).  In October 2007, Dr. Rahdert completed a mental RFC questionnaire diagnosing Hill with major depression.  (R. 488).  Dr. Rahdert noted however that Hill's moods had leveled out and that she had a reasonable response to and no side effects from her

medications.  (R. 488).  Further, he noted that Hill had a limited, but satisfactory, ability to perform at a consistent pace without an unreasonable number and length of rest periods; that she could respond appropriately to changes in the work setting; deal with normal work stress and the stress of semi-skilled and skilled work; understand, remember, and carry out detailed instructions; set realistic goals or make independent plans; and interact appropriately with the general public.  (R. 490-91).

In March 2008, consulting psychologist John Heroldt performed a mental status examination of Hill and administered the Minnesota Multiphasic Personality Inventory-2. (R. 351-52).  Dr. Heroldt noted that Hill "approached the MMPI-2 in a way to maximize her responses leading to an invalid profile and making interpretation of the rest of the profile clinically inappropriate."  (R. 351).  Based on Hill's statements, he diagnosed Hill as suffering from bipolar II disorder.  (R. 351).

On June 4, 2008, Ms. Shorter completed a two-page report stating that Hill struggled with depression but had made a lot of positive improvements in her life.  She diagnosed Hill with severe recurrent major depression without psychosis. (R. 399).  On June 30, 2008, Dr. Rahdert completed a one-page form and diagnosed Plaintiff with major depression with bipolar features and stated that Hill had marked limitations in maintaining social functioning and concentration, persistence, or pace; had moderate episodes of decompensation; and would miss more than four days of work per month.  (R. 368).  He did not list any limitations in Hill's daily living activities.  (R. 368).

At the hearing, Dr. Georgiann Pitcher, a licensed clinical psychologist, testified

concerning Hill's mental impairments, opining that, while Dr. Rahdert's October 2007 opinion was consistent with his treatment notes and the overall record (R. 758-60, 799-803, 822), Dr. Rahdert's June 2008 report was inconsistent with his treatment notes and not supported by any evaluation. (R. 758-60). Additionally, Dr. Pitcher testified that, though Hill was diagnosed with bipolar disorder, she had been treated only for depressive, but no manic, episodes. Finally, Dr. Pitcher stated that Hill's mental impairments did not meet or medically equal the requirements of Listing 12.04.

### Analysis

Hill contends that the ALJ erred in determining Hill's fibromyalgia and bipolar disorder were not severe impairments at Step 2. Hill also asserts that the ALJ erred at Steps 3 and 5 with regard to the relative weight he assigned to the medical opinions of her treating physicians and in his findings regarding Hill's credibility.

## I.      Failure to Recognize Fibromyalgia as Severe Impairment

First, Hill argues that the ALJ erroneously determined that Hill's fibromyalgia was not a severe impairment at step two of his analysis, because he "misperceived the nature of fibromyalgia and the attendant legal standard used by the SSA to evaluate it." (Pl. Br. at 22). In determining that Hill's fibromyalgia was not a severe impairment, the ALJ stated that the medical expert testifying at the hearing "pointed out that fibromyalgia is mentioned in the record, but no blood tests or other tests have been [undertaken] and that the claimant's report of tender points is totally subjective." (R. 35.) This is the only reason the ALJ gives for not finding Hill's fibromyalgia to be a severe impairment.

Hill cites to *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996), for the proper standards that the ALJ should have used in evaluating Hill's fibromyalgia. *Sarchet* stresses the subjectivity of fibromyalgia, the lack of laboratory tests available to confirm a diagnosis, and the care that must be taken not to discount complaints of pain simply because the condition is so subjective. *Id.* at 306. *Sarchet* also highlights that the "only symptom that discriminates between it and other diseases of a rheumatic character [are] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Id.* Though most of the symptoms of fibromyalgia are "easy to fake," "few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." *Id.* Thus, ensuring that the tender spot test is performed allows a court to verify a claimant's credibility.

Although there are references in the record to Hill's having at least some tender points, no medical source referenced in the record had identified Hill as having at least eleven out of the eighteen tender points as is usually necessary to confirm a diagnosis of fibromyalgia. (R. 791-92; Doc. 21-4 at 3). Thus, the ALJ did not have sufficient evidence to decide whether Hill was disabled on this basis, and the ALJ had to "try to obtain additional evidence." 20 C.F.R. § 416.912(d); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (an ALJ has an affirmative duty to develop a full and fair record). We note here that Hill's attorney was not particularly helpful in highlighting for

the benefit of the ALJ the absence of a tender-point test so that the ALJ could try to obtain evidence.  Hill's attorney in fact specifically informed the ALJ that the record was closed and failed to request an extension of time to obtain more medical evidence.  (R. 12-20).  However, according to applicable regulations, the Social Security Administration promises that "when the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information is available. . . when the report from your medical source . . . does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1).

Because the ALJ's sole reason for discounting Hill's testimony and her treating physician's opinions was that there were "no blood tests or other tests" to confirm a diagnosis of fibromyalgia, the ALJ was obligated to undertake the necessary steps to obtain evidence demonstrating whether Hill had satisfied the only objective test that could confirm her diagnosis of fibromyalgia.[1]  Therefore, we agree with Hill that there was not sufficient evidence to render an opinion on whether Hill's fibromyalgia constituted a severe impairment, and thus, we shall remand to the ALJ this issue for further

---

[1] Evidence demonstrating that Hill has sixteen out of eighteen trigger points was submitted to this Court in Hill's Motion to Supplement the Record on December 4, 2009, but of course such evidence was not before the ALJ at the time he rendered his decision.  (Doc 21, Ex. C at 5).

consideration.[2] *See Garza v. Barnhart*, 397 F.3d 1087 (8th Cir. 2005) (remanding so that the record could be developed to include information regarding whether the claimant met the tender points test when the claimant had all of the other symptoms associated with fibromyalgia).

## II.    Bipolar Disorder

Hill also argues that the ALJ improperly rejected the medical opinions of Hill's treating sources, having given them no weight at all with respect to her bipolar disorder condition, and also having erred in his credibility determination regarding her testimony. Hill claims these errors undermined the accuracy of the ALJ's determinations that she does not have an impairment equaling a Listing at step three and that her RFC allows her to perform light work for purposes of steps four and five.

### A.    The ALJ's Assessment of the Weight of Medical Opinions

The "treating physician" rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'non inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart*, 439 F.3d 375,

---

[2] After finding that Hill's fibromyalgia was not a severe impairment, the ALJ did not explicitly discuss fibromyalgia with respect to the remaining steps. However, the ALJ did evaluate Hill's complaints of subjective pain throughout the opinion. Thus, we note that, on remand, if the ALJ finds that fibromyalgia is a severe impairment, care must be taken to ensure that Hill's complaints regarding her pain are not simply discounted because she is "able to engage in sporadic physical activities," *Carradine v. Barnhart*, 360 F.3d 751, 755 (2004), and remember that "its symptoms are entirely subjective." *Sarchet*, 78 F.3d at 305.

376 (7th Cir. 2006); *see* 20 C.F.R. § 404.1527(d)(2). However, "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Hofslien*, 439 F.3d at 376. Under this circumstance, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." *Id.* at 377. In such cases, a "checklist" is utilized by which the ALJ is required to consider various factors to determine the weight of a treating physician's evidence. *Id.* Factors an ALJ is directed to consider include "how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disability, and so forth." *Id.*

First, despite Hill's arguments to the contrary, we find that the ALJ did not improperly discount evidence from Hill's treating physician's opinion demonstrating her bipolar disorder equaled a Listing at step three.[3] Hill's treating physician, Dr. Rahdert, a specialist in psychiatric disorders, treated Hill beginning in 2005. The only evidence establishing that Hill could potentially satisfy a step three listing was Dr. Rahdert's statement that Hill was markedly limited in social functioning and in concentration,

---

[3] Hill also alleges that the ALJ erred at step two because he "never discussed Claimant's diagnosis of bipolar disorder in his decision at all" and instead "evaluated claimant for Major Depressive Disorder," rather than bipolar disorder. (Pl. Br. at 29). The ALJ's failure to label bipolar disorder as severe is not, on its own, reversible error because the ALJ continued with the regulations' sequential evaluation of the claim and considered all of the evidence regarding Hill's non-severe impairments, including bipolar disorder, through the remaining steps of the disability evaluation process. Because the ALJ's alleged misunderstanding of the difference between major depressive and bipolar disorder factors into our analysis of the ALJ's conclusion at step three and his RFC determination for purposes of steps four and five, we discuss it further in conjunction with that part of our analysis.

persistence, or pace. (R. 368). The ALJ properly explained his reasons for discounting this isolated bit of evidence, noting that it was not supported by any treatment notes or other evidence and was inconsistent with the medical evidence of record, including Dr. Rahdert's own more detailed opinion rendered a year earlier. (R. 38, 368, 490-92).

We do, however, agree with Hill that the ALJ improperly discounted the reports of Hill's treating physicians with respect to her RFC. The "checklist" required the ALJ to give great weight to their evidence unless it was seriously flawed. Here, the ALJ gave non-treating consultant Dr. Pitcher's testimony "great weight" and discounted Dr. Rahdert's views because of "contradictory statements" made over the course of three years. (R.42-43). However, we view Dr. Rahdert's statements to be not so much "contradictory" as reflective of the nature of bipolar disorder causing a person to experience sequential highs and lows. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). It is well-recognized that bipolar disorder, like other disorders, is not static and changes with time and as medications are adjusted in accordance with a patient's symptoms.

Additionally, as Hill points out, the ALJ completely ignored the evidence from Counselor Shorter reporting on Hill's bipolar disorder in determining Hill's RFC. Though Shorter is an "other source" whose opinion is entitled to less weight than a physician, it still "may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this could

occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." 20 C.F.R. § 404.1513(d); SSR 06-03p. Here, because Counselor Shorter had seen Hill for a period of years and had in the process recorded her observations, we find that the ALJ should have considered her opinion, at least in some fashion, especially in light of the apparent conflict between the testimony of Dr. Rahdert and the consultant, Dr. Pitcher.

Finally, Hill asserts that the ALJ discounted Hill's treating physicians' opinions regarding whether she would be able to maintain full-time employment. The ALJ noted that "opinions on reserved issues (such as ability to work) are given no special weight in determining the claimant's functional capacity." (R.43). Hill argues, however, that a medical expert "may report or testify that the patient is unable to perform . . . jobs" when it is apparent "that the patient has a physical or mental condition that prevents him from performing on a full-time basis any jobs having particular requirements." *Bauer*, 532 F.3d at 609. Though "their judgment is not conclusive," when it is "not offset by evidence concerning the availability of jobs to someone having the plaintiff's disorder plus her other characteristics," it should be given some weight. *Id.* Because apparently no such offsetting evidence was presented at the hearing, the ALJ erred by completely discounting those opinions.

In sum, the ALJ's determination that Hill's bipolar disorder did not meet a Listing is affirmed. However, when the ALJ discounted Dr. Rahdert's opinions due to reasons inherent to bipolar disorder itself and ignored all evidence presented from Counselor Shorter in determining Hill's ability to work, he erred. On remand, care should be taken to ensure that Hill's treating physicians' opinions are given proper weight.

### B.      ALJ's Credibility Determination

Hill also challenges the ALJ's decision to discount Hill's own testimony about her symptoms and experiences with bipolar disorder with respect to determining whether she satisfied a Listing and whether her RFC permitted her to work. First, in determining whether Hill met Listing 12.04, specifically, whether she had marked limitations in daily living, the ALJ found that Hill's own testimony regarding her restrictions was not borne out in the medical record. (R. 41). Regardless of any errors the ALJ may have made in weighing Hill's credibility with respect to whether she satisfies Listing 12.04, his finding was nonetheless supported by substantial evidence because there was no medical testimony showing that she experienced the necessary marked limitations as discussed above. Thus, the ALJ was not required to believe claimant's testimony over the opinions of her treating physicians and the medical experts at the hearing.

However, we conclude that the ALJ did err in his assessment regarding Hill's ability to work. In determining whether Hill's RFC allowed her to perform work, the ALJ found that Hill's medically determinable impairments could reasonably be expected

to produce the alleged symptoms, (R. 40), but found Hill's statements concerning the intensity, persistence and limiting effects of these symptoms to be not entirely credible because of her "highs" as well as her "down" periods. Hill challenges his second finding, arguing that his reasons for discounting her testimony suggest "a lack of acquaintance with bipolar disorder" and actually support the severity of her bipolar disorder.

In *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008), the court noted that the reasons offered by an ALJ for discounting the claimant's testimony about her "low" periods suggested a lack of acquaintance with bipolar disorder, after the ALJ noted that the claimant "dresses appropriate, shops for food, prepares meals and performs other household chores, . . . 'independent in her personal hygiene,' and takes care of her 13-year-old son." *Bauer*, 532 F.3d at 608-09. The *Bauer* court stated that these reasons are insufficient in terms of discounting the evidence of claimant and her treating physicians. The only thing these reasons demonstrate is that the "plaintiff is not a raving maniac who needs to be locked up. She is heavily medicated, and this enables her to cope with the challenges of daily living, and would doubtless enable her to work on some days." *Id.* at 608.

Here, the reasons for discounting Hill's credibility and finding Dr. Rahdert's opinions contradictory are strikingly similar to those given by the ALJ in *Bauer*. The ALJ states that, "[a]lthough she reported depression most of the time in the written record[,] she also described monthly "highs" when she [sic] her energy level was high and

she cleaned house day and night." (R. 41). The ALJ noted past observations of Hill playing with her dog, crocheting, chaperoning a field trip with her daughter, purposely losing ten pounds, and being well-groomed. The ALJ concluded that, "while [these activities] do not necessarily establish the ability to sustain competitive work on a regular and continuing basis[,] they are strong evidence that the claimant has overstated her limitations and understated her functional capacity." (R. 41). However, as in *Bauer*, these reasons are not proper considerations as a basis for discounting a claimant's testimony and a treating physician's testimony. Rather, they simply show that Hill is an individual who has a "chronic disease . . is under continuous treatment for it with heavy drugs, [and] is likely to have better days and worse days." *Bauer*, 532 F.3d at 608.

Thus, though the ALJ's credibility determination at step three does not constitute reversible error, the ALJ did err in assessing Hill's credibility concerning the intensity, persistence, and limiting effects of her bipolar disorder for the purposes of determining her RFC. On remand, Hill's credibility should be reexamined without discounting it for reasons inherent to her condition.

## III. Conclusion

For the reasons discussed in this Entry, the Commissioner's decision is not supported by substantial evidence and is based on legal error as set forth above. His denial is therefore <u>REVERSED</u> and Plaintiff's case must be <u>REMANDED</u> to the Commissioner for re-evaluation consistent with this entry. Because we found sufficient

grounds to remand pursuant to sentence four, Plaintiffs request in the alternative for a

sentence six remand is <u>DENIED AS MOOT</u>.

      IT IS SO ORDERED.


Date: \_\_\_\_\_09/27/2010_____

                                            SARAH EVANS BARKER, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

C. David Little
POWER LITTLE & LITTLE
powerlittl@accs.net